IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HANSEI WEI,

    *Plaintiff*,

    v.

XIAODONG XU, *et al.*,

    *Defendants*.

Civil Action No.  ELH-21-601

**MEMORANDUM OPINION**

Plaintiff Hansi Wei, individually and derivatively on behalf of The Patterson Partnership and The Statesboro Partnership (the "Partnerships"), filed a "Complaint For Partnership Dissolution And Injunctive Relief" against Xiaodong Xu, Guanhua Xu, and Cruikshank Ersin, LLC ("CELLC").  ECF 1 (the "Complaint").[1]  The Complaint contains twelve counts, asserting claims for breach of contract, unjust enrichment, declaratory judgment, breach of partnership agreement, and breach of fiduciary duty.  It also seeks an accounting and dissolution of the Partnerships.  And, plaintiff seeks to enjoin CELLC "from distributing the proceeds of sale of the Patterson Property until directed by this Court."  *Id.* at 8.

Summons were returned executed on May 5, 2021, which evidenced service on Mr. Xu and Ms. Xu on March 12, 2021, and on CELLC on April 30, 2021.  ECF 7; ECF 8; ECF 9.  Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), defendants' answers to the suit were due by April 2, 2021, and May 21, 2021, respectively.  However, they never responded to the Complaint.  Indeed, at no point

---

[1] The Court's jurisdiction is premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332. *See* ECF 1, ¶ 5.

in the litigation has any defendant ever noted an appearance, submitted any filings, or otherwise participated. *See* Docket.[2]

On April 20, 2021, plaintiff asked the Clerk of Court to enter an order of default as to Mr. and Ms. Xu, because they had not responded to the Complaint. ECF 6. The Clerk entered an order of default against Mr. and Ms. Xu on May 6, 2021. ECF 10. And, on May 24, 2021, plaintiff asked the Clerk to enter an order of default as to CELLC, likewise for want of answer or other defense. ECF 12. An order of default was entered against CELLC on June 9, 2021. ECF 13.

Each entry of default was accompanied by a Notice of Default mailed to the defaulting party, advising the party of the right to file a motion to vacate the order of default, due within thirty days. ECF 11; ECF 14. However, no defendant ever filed such a motion. *See* Docket.

On August 12, 2021, the Court ordered plaintiff to file a status report by September 2, 2021. ECF 15. Thereafter, on August 18, 2021, plaintiff moved for default judgment as to CELLC. ECF 16. The motion represented that CELLC held $192,264.89 in escrow for the parties from the sale of the Patterson Partnership's sole asset (the "Patterson Sale Proceeds"), and asked the Court to order CELLC to pay this sum into the Court's registry, pending its distribution according to further proceedings between plaintiff and Mr. and Ms. Xu. *Id*. ¶¶ 6-11. Moreover, the motion indicated that CELLC did not oppose the relief sought. *See id*. ¶ 12.

---

[2] With their summary judgment motion (ECF 21), discussed *infra*, plaintiff disclosed that on June 12, 2021, he received a document from Mr. and Ms. Xu entitled "Motion or Answer for Mr. Wei's Summons." ECF 21-1 at 8 n.2; ECF 21-8 (the document). In the document, Mr. and Ms. Xu appear to contest certain factual allegations in the Complaint, without providing detail. *See id*. However, the document also indicates that Mr. and Ms. Xu will pay certain amounts sought by plaintiff. *See id*. Regardless, Mr. and Ms. Xu never submitted this document to the Court, nor did they move to vacate the entry of default, respond to the summary judgment motion, or take any other action to participate in this litigation.

No objections having been received, the Court granted the motion for default judgment on September 2, 2021, and ordered the requested relief.  ECF 19.  A check for the appropriate sum was received by the Court from CELLC.  *See* Docket.  The funds have remained in the registry of the Court.

Plaintiff submitted the requested status report on September 2, 2021.  ECF 18.  He indicated that he intended to move for summary judgment in order to dissolve and terminate the Partnerships and as to distribution of proceeds.  *See* ECF 18; *see also* ECF 20 (status report of October 15, 2021).

Thereafter, on November 7, 2021, plaintiff moved for summary judgment as to Mr. and Ms. Xu.  ECF 21.  The motion is accompanied by a memorandum (ECF 21-1) (collectively, the "Summary Judgment Motion" or the "Motion") and several exhibits.  ECF 21-2 to ECF 21-9.  The Motion reflects that developments following the filing of the Complaint have resolved some of plaintiff's claims against Mr. and Ms. Xu.  Accordingly, the Motion seeks more limited relief than that sought by the Complaint. Specifically, the Motion asks the Court to enter judgment dissolving the Partnerships, and directing certain actions related to the winding up of both Partnerships.  *See id*. at 9-15.  The Court discusses these actions in more detail, *infra*.

Plaintiff served the Summary Judgment Motion by mail on Mr. and Ms. Xu.  ECF 21 at 2. In addition, the Clerk of Court mailed a notice to Mr. and Ms. Xu, advising them they if they did not file a timely written response within 28 days, the Court could dismiss the case and enter judgment against them without further opportunity to present written argument.  ECF 24.[3] However, Mr. and Ms. Xu never responded to the Motion, and the time to do so has passed.

---

[3] Before entering summary judgment against a pro se litigant, the Court must issue the requisite notice. *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam). Although

3

Plaintiff has also filed two petitions for attorneys' fees and costs, one for work by counsel on behalf of the Patterson Partnership (ECF 22, the "Patterson Attorneys' Fees Petition"), and one for work by counsel on behalf of the Statesboro Partnership. ECF 23 (the "Statesboro Attorneys' Fees Petition"). Each petition is accompanied by exhibits. *See* ECF 22-1 to ECF 22-5; ECF 23-1 to ECF 23-5. I refer to these petitions collectively as the "Attorneys' Fees Petitions." Again, no response or opposition to the Attorneys' Fees Petitions has been received.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Summary Judgment Motion. And, I shall grant the Attorneys' Fees Petitions, except as to costs.

## I.    Factual Background[4]

According to the Complaint, plaintiff is a resident of Baltimore, and Xiaodong Xu and Guanhua Xu, who are married, are residents of Loudon County, Virginia. ECF 1, ¶¶ 1-3. Plaintiff is a part owner of the Partnerships. ECF 21-2 (Hansei Wei Aff.), ¶ 2. Mr. and Ms. Xu were business partners with Zhong Jun Wei, plaintiff's father. *Id*. ¶¶ 4, 24. Beginning in 2016, Zhong Jun Wei and Mr. and Ms. Xu sought to invest in, and manage, residential rental properties. *Id*. ¶ 5. The Partnerships at issue here, the Patterson Partnership and the Statesboro Partnership, relate to this activity.

---

the Summary Judgment Motion was filed on November 7, 2021, the requisite notice was not mailed by the Clerk of Court until March 25, 2022. *See* Docket.

[4] The factual background is drawn from the materials provided to the Court with the Summary Judgment Motion.

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

As part of their investment business, on March 21, 2016, Zhong Jun Wei and Mr. Xu executed an agreement establishing the Patterson Partnership. *Id.* ¶ 5; *see* ECF 21-3 (the "Patterson Agreement").  At about the same time, they also purchased property on Patterson Park Drive in Lawrenceville, Georgia (the "Patterson Property") as a residential rental investment.  ECF 21-2, ¶ 6.

The Patterson Agreement recites that Mr. Xu and Zhong Jun Wei, referred to as "Tenants in Common," jointly acquired fee title to the Patterson Property, with each holding an equal and undivided interest of 50%.  ECF 21-3 at 1.  The Patterson Agreement imposes certain limitations on the right of each Tenant in Common to dispose of or transfer his undivided interest in the Patterson Property, subject to certain exceptions.  *Id.* at 1.  One exception provides that, upon the death of a Tenant in Common, his interest could be transferred to a "related individual."  *Id.*

The Patterson Agreement also provides: "The profits and losses from the operation of the [Patterson] Property shall be determined in written [sic] and signed by both parties at a later time." *Id.* at 2.  To this end, on the same day, Mr. Xu and Zhong Jun Wei agreed to a "Profit and loss addendum" to the Patterson Agreement.  ECF 21-4 (the "Patterson Addendum").[5]  The Patterson Addendum specifies that Mr. Xu contributed $10,000 as an initial investment in the Patterson Property, as a tenant in common, while Zhong Jun Wei contributed $10,000 as a tenant in common and $53,000 via a loan, at 5.5% interest.  *Id.*  Further, the Patterson Addendum states that income through rent is divided evenly between the Tenants in Common, after payment of interest on Wei's loan and costs.  *Id.*  Upon the sale of the property, if the amount of the sale exceeds the initial investment, the proceeds would also be divided evenly between the Tenants in Common, after payment of any remaining sum due on Wei's loan, including interest.  *Id.*

_____

[5] References to the "Patterson Agreement" include the Patterson Addendum.

Several other provisions of the Patterson Agreement are of relevance. The Patterson Agreement terminates upon the sale of the Patterson Property and the distribution to the Tenants in Common of the net proceeds of the sale, or as otherwise agreed to by the Tenants in Common in writing. ECF 21-3 at 2. The agreement is "governed by the laws of the State of Maryland without giving effect to any conflicts of law provisions." *Id.* at 3. Notably, "[i]f any action at law or in equity is brought to enforce or interpret the provisions of [the Patterson Agreement], the prevailing party will be entitled to reasonable attorney's fees . . . ." *Id.*

In 2018, Zhong Jun Wei passed away. ECF 21-2, ¶ 8. Plaintiff, who is Zhong Jun Wei's "sole son and heir," became the successor-in-interest to his father's rights, title, and interest in and to the Patterson Partnership, under the "Transfer to Related Individual" clause of the Patterson Agreement. *Id.* ¶ 9.[6]

However, in breach of the Patterson Agreement, Mr. Xu failed to pay either plaintiff or plaintiff's father "any payments or profits" due to them under the Patterson Agreement, "despite the Patterson Partnership having obtained profits from and after 2017." *Id.* ¶ 10. Instead, Mr. and Ms. Xu "unlawfully diverted said monies to themselves." *Id.* ¶ 11. In addition, "despite repeated demand," Mr. Xu "failed to make even simple efforts to repair the Patterson Property or find paying tenants," leaving the Patterson Property vacant since July 2019. *Id.* ¶ 12. As a result, according to plaintiff, the conduct of Mr. and Ms. Xu has made it "not reasonably practicable" for

---

[6] This paragraph of Plaintiff's Affidavit appears in the section titled "The Patterson Partnership." Paragraph 9 of the Affidavit refers to the "Statesboro Partnership." ECF 21-2, ¶ 9. Plaintiff also succeeded his father as to the Statesboro Partnership. *See id.* ¶ 32. But, in context, the reference to the Statesboro Partnership is clearly a typographical error; paragraph 9 of the Affidavit refers to the Patterson Partnership.

the Tenants in Common to carry on the business in partnership with one another, and in conformity with the Patterson Agreement.  *Id.* ¶¶ 13, 14.[7]

In January 2021, the Patterson Property was sold for the sum of $192,264.89.  *Id.* ¶¶ 16, 17.  As noted, this amount is currently being held in the Court's registry pending disposition of this action.  *See* ECF 19.  Moreover, since the filing of the litigation, Mr. and Ms. Xu have made payments to plaintiff sufficient to cover past-due partnership profits that had been owing under the Patterson Partnership.  ECF 21-2, ¶ 18.  Therefore, according to plaintiff, all that remains is to wind up the Patterson Partnership by distributing this sum in accordance with the Patterson Agreement.  *Id.* ¶ 19; *see* ECF 21-5 (plaintiff's calculation of Patterson Partnership distribution).  Plaintiff also claims that attorney's fees should be deducted from Mr. Xu's share.  ECF 21-2, ¶ 22.

In particular, plaintiff seeks payment of $130,283.32 for himself and $61,981.57 for Mr. Xu, minus legal fees.  *Id.* ¶¶ 21, 22.  The amount for plaintiff takes into account the repayment of Zhong Jun Wei's loan of $53,000, the entire principal of which remains outstanding, as well as $15,301.75 in interest.  *See* ECF 21-5.  Thereafter, the Patterson Partnership "should be deemed terminated."  ECF 21-2, ¶ 23.

The second partnership at issue is the Statesboro Partnership.  In 2011, Ms. Xu purchased a residential property located at Statesboro Court in Manassas, Virginia (the "Statesboro Property").  *Id.* ¶ 24; *see* ECF 21-7 (the deed to the Statesboro Property).

On March 21, 2016, the same date that Mr. Xu and Zhong Jun Wei executed the Patterson Agreement, Zhong Jun Wei and Ms. Xu executed an agreement establishing the Statesboro Partnership.  *Id.* ¶ 26; *see* ECF 21-6 (the "Statesboro Agreement").  As described by plaintiff,

---

[7] Paragraph 14 of plaintiff's Affidavit again refers to the "Statesboro Agreement." *See* ECF 21-2, ¶ 14. But, it is clear that plaintiff means to refer to the Patterson Agreement.

under the Statesboro Agreement, "in return for certain capital contributions, Zhong would hold a partnership interest in the Statesboro Property along with Defendant Guanhua Xu." ECF 21-2, ¶ 26.

The language of the Statesboro Agreement is similar to that of the Patterson Agreement. *Compare* ECF 21-3 *with* ECF 21-7. The Statesboro Agreement recites that Ms. Xu and Zhong Jun Wei, referred to as the "Tenants in Common," jointly acquired the fee title to the Statesboro Property, with each holding an equal and undivided interest of 50%. ECF 21-7 at 1. And, the Statesboro Agreement includes provisions identical to the Patterson Agreement as to restrictions on transfer; an exception for related individuals; termination; Maryland choice of law; and attorney's fees. *See id*. at 1-3.

Like the Patterson Agreement, Ms. Xu and Zhong Jun Wei executed a "Profit and loss addend [sic]" to the Statesboro Agreement. ECF 21-7 at 4 (the Statesboro Addendum).[8] The Statesboro Addendum specifies that Ms. Xu contributed $15,000 as an initial investment in the Statesboro Property, as a tenant in common, while Zhong Jun Wei contributed $15,000 as a tenant in common, and plaintiff contributed $100,000, via a loan, at 5.5% interest. *Id*. The Statesboro Addendum provides that income through rent is split evenly between the two Tenants in Common, after interest on plaintiff's loan and costs. *Id*. Moreover, upon the sale of the property, if the amount of the sale exceeds the initial investment, the proceeds would likewise be split evenly between the two Tenants in Common, after payment of any remaining amount due on plaintiff's loan, including interest. *Id*.

Despite the language of the Statesboro Agreement, the Statesboro Property was not conveyed to the Statesboro Partnership, and bare legal title remains with Ms. Xu. ECF 21-2, ¶ 28.

---

[8] References to the "Statesboro Agreement" include the Statesboro Addendum.

However, according to plaintiff, "it was the intention of Guanhua Xu and Plaintiff's predecessor in interest to have the Statesboro Property deemed as partnership property." *Id*. ¶ 29.  And, the Statesboro Agreement reflects that Ms. Xu and Zhong Jun Wei agreed to an equal interest in the Statesboro Property as Tenants in Common, with an initial investment in the Statesboro Property from both of them and plaintiff, and with proceeds from the Statesboro Property to be distributed among both of them, as well as to plaintiff, to repay his loan.  *See* ECF 21-7 at 1, 4.

In addition, according to plaintiff, Ms. Xu was the listed partner on the Statesboro Agreement.  ECF 21-2, ¶ 30.  But, "generally her husband," Mr. Xu, "acted for her regarding the Statesboro Partnership."  *Id.*

As with the Patterson Partnership, after Zhong Jun Wei's death in 2018, plaintiff became the successor-in-interest to all of his father's rights, title, and interest in and to the Statesboro Partnership, under the "related individual" clause of the Statesboro Agreement.  *Id*. ¶ 32.  However, since January 2017, Mr. and Ms. Xu initially failed to pay either plaintiff or his father any payments or profits due to them under the Statesboro Agreement, despite the Statesboro Partnership having earned profits.  *Id*. ¶ 33.  Instead, Mr. and Ms. Xu "unlawfully diverted said monies to themselves." *Id*. ¶ 34.

Plaintiff raised concerns to Mr. Xu in 2019 regarding Mr. Xu's retention of rent from the properties.  *Id*. ¶ 35.  Mr. and Ms. Xu then allowed plaintiff to collect rent from the Statesboro Property.  *Id*. ¶ 36.  But, they still "failed to account for their retention of rents and other income under the Statesboro Partnership."  *Id*.  As a result, according to plaintiff, the conduct of Mr. and Ms. Xu has made it "not reasonably practicable" for the Tenants in Common to carry on the business in partnership with one another, and in conformity with the Statesboro Agreement.  *Id*. ¶¶ 37, 38.

Plaintiff acknowledges that, "since the filing of this litigation," Mr. and Ms. Xu "have made payments to [plaintiff] sufficient to cover past-due partnership profits" that had been owing. *Id*. ¶ 42. What remains, according to plaintiff, is for the Court to declare the Statesboro Property as property of the Statesboro Partnership, and for the Statesboro Property to be sold and its assets distributed in accordance with the Statesboro Agreement, less attorney's fees. ECF 21-1 at 7-8, 10; ECF 21-2, ¶¶ 40-47. After this occurs, the Statesboro Partnership should be deemed terminated. ECF 21-2, ¶ 47.

The Complaint also lodged claims against Mr. and Ms. Xu in relation to a property located at Irongate Way in Manassas, Virginia, which is owned by plaintiff (the "Irongate Property"). *See* ECF 1, ¶¶ 27-34. However, according to the Motion, the matters related to the Irongate Property have been resolved, and no further action is necessary. ECF 21-1 at 8; ECF 21-2, ¶¶ 48-49.

## II.    Summary Judgment Motion

### A.    Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc*., 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).[9] To avoid summary judgment, the nonmoving party

---

[9] After the entry of default, a party typically moves for default judgment, rather than summary judgment. Although there is little clear authority on this point, some district courts have held that a motion for summary judgment following the entry of default should be construed as a motion for default judgment. *See, e.g.*, *Harris v. Blue Ridge Health Services, Inc*., 388 F. Supp. 3d 633, 636 (M.D.N.C. 2019); *Erie Ins. Property & Casualty Co. v. Wellford*, No. 2:17-cv-2976, 2018 WL 3636562, at *2 (S.D. W. Va. July 31, 2018).

must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla

---

In the context of this case, the difference is one of approach, but not of substance. As discussed, *infra*, when a summary judgment motion is unopposed, "those facts established by the motion" are uncontroverted, but "the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (internal citation omitted). Similarly, in the case of a default judgment motion, the plaintiff's factual allegations are deemed admitted, but the court must assess whether the undisputed factual allegations constitute a legitimate cause of action. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Here, the facts established in the Summary Judgment Motion are consistent with those alleged in the Complaint, save for certain factual developments that have occurred since the litigation began, as discussed.

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, she must support her factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . ." But, where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record. And, "the burden on the moving party may [also] be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp*., 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co*., 475 U.S. at 587; accord *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc*., 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249;

accord *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc*., 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc*., 370 F.3d 423, 433 (4th Cir. 2004)). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *Harris v. Home Sales Co*., 499 Fed. App'x 285, 294 (4th Cir. 2012).

As noted, defendants have not opposed the Summary Judgment Motion. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

Therefore, a district judge must "'thoroughly analyze[ ]' even an unopposed motion for summary judgment." *Philips v. Saibu*, PWG-17-3221, 2020 WL 42754, at *1 (D. Md. Jan. 3, 2020) (alterations in *Philips*) (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013)). Indeed, in considering a motion for summary judgment, the district court

"*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (emphasis in original) (citation and internal quotations omitted).

## B.  Discussion

Plaintiff asks the Court to dissolve each partnership, on the grounds that Mr. and Ms. Xu have engaged in conduct which makes it not reasonably practicable to carry on each business in partnership with them, nor reasonably practicable to carry on the partnership business in conformity with the partnership agreements.  ECF 21-1 at 9; *see* Md. Code (2014 Repl. Vol., 2021 Supp.), § 9A-801(5) of the Corporations and Associations Article ("C.A.").

As part of the winding up of the Partnerships, plaintiff asks the Court to take a number of specific steps.  As to the Patterson Partnership, plaintiff seeks an order to distribute the Patterson Sale Proceeds held in the Court's registry in accordance with the Patterson Agreement, as specified in the Motion, less attorney's fees.  ECF 21-1 at 9-10.  And, once this distribution occurs, the Patterson Partnership should be deemed terminated.  *Id*. at 10.

The relief requested for the Statesboro Partnership is slightly more involved.  Plaintiff asks the Court to declare that the Statesboro Property is property of the Statesboro Partnership, and to direct its sale so as to wind up the Statesboro Partnership.  *Id*. at 10.  To effectuate this sale, plaintiff proposes that the Court appoint Ryan Z. Ullman, Esq., plaintiff's counsel, as Partnership Trustee. *Id*. at 10-11.  Sale would be through a listing with a licensed realtor, and on such terms as are recommended by the realtor.  *Id*. at 11.  Moreover, if no sale has occurred within four months of Ullman's appointment, plaintiff asks the Court to authorize Ullman to put the Statesboro Property up for public auction in a commercially reasonable manner.  *Id*.

Proceeds of the sale should be distributed in accordance with the Statesboro Agreement, less commission fees for the Partnership Trustee and attorney's fees. *Id.* The Partnership Trustee should be required to file with the Court a report of sale proceeds and statement of intended distribution, after sale of the Statesboro Property. *Id.* If twenty days have passed without objection, the Partnership Trustee should be authorized to distribute sale proceeds according to the statement of intended distribution, without further Court order. *Id.* at 11-12. And, upon this distribution, the Statesboro Partnership should be deemed terminated. *Id.* at 12.

Although the facts in plaintiff's Summary Judgment Motion are uncontroverted, I must determine if plaintiff is entitled to its proposed judgment, and the requested relief, as a matter of law. *Custer*, 12 F.3d at 416. I conclude that he is.

I first discuss the choice of law. For a state law claim considered under diversity jurisdiction, the Court must apply the law of the forum state, including as to choice of law. *See, e.g.*, *Nash v. Montgomery Cty.*, GJH-20-1138, 2021 WL 1222874, at *7 n.7 (D. Md. Mar. 31, 2021); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008). Here, the forum state is Maryland.

As to contracts, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g.*, *Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "In Maryland, choice of law provisions in contracts are enforceable unless the choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy

difference in the laws of another jurisdiction with a more substantial interest in the parties or the transaction." *United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp.*, 235 F. Supp. 3d 745, 752 n.9 (D. Md. 2016) (citing *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 921 A.2d 799, 803-05 (2011)); *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187.

Here, both partnership agreements have choice of law provisions that expressly provide that the Partnerships will be governed by Maryland law, "without giving effect to any conflicts of laws provisions." ECF 21-3 at 3; ECF 21-7 at 3. And, there is no dispute as to the validity of either agreement, nor the choice of law provisions. Therefore, I will apply Maryland law.

Under Maryland law, "[a] partnership is a contractual relationship to which the principles of contract law are fully applicable." *Della Ratta v. Larkin*, 382 Md. 553, 569, 856 A.2d 643, 652-53 (2004). "The general rule is that the partnership agreement governs the relations among the partners and between the partners and the partnership." *Id.* at 564, 856 A.2d at 649; *see also* C.A. § 9A-103(a).

In Maryland, all partnerships formed after December 31, 2002, are governed by the Revised Uniform Partnership Act ("RUPA"), C.A. § 9A-101 *et seq. See* C.A. § 9A-1304(b); *Della Ratta*, 382 Md. at 564-65, 856 A.2d at 650. And, as noted, under RUPA, subject to certain exceptions, "relations among the partners and between the partners and the partnership are governed by the partnership agreement." C.A. § 9A-103(a); *see also Creel v. Lilly*, 354 Md. 77, 91, 99, 729 A.2d 385, 393, 397 (1999) ("RUPA is a 'gap filler' in that it only governs partnership affairs to the extent not otherwise agreed to by the partners in the partnership agreement. . . . RUPA only appl[ies] when there is either no partnership agreement governing the partnership's affairs, the agreement is silent on a particular point, or the agreement contains provisions contrary to law.").

16

Under RUPA, "the unincorporated association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership and whether or not the association is called 'partnership', 'joint venture', or any other name." C.A. § 9A-202(a). Tenancy in common "does not *by itself* establish a partnership . . . ." *Id*. § 9A-202(d)(1) (emphasis added). Under the partnership agreements here, the parties are tenants in common. But, the uncontroverted facts indicate that the agreements were executed between business partners in the context of the investment and management of real estate properties, as a profit-seeking venture. ECF 21-2, ¶¶ 4-6, 26-27. Therefore, I am satisfied that the Partnerships qualify as partnerships under RUPA.

"A partnership is dissolved, and its business must be wound up, only upon the occurrence" of certain events specified by statute. C.A. § 9A-801. And, "a partnership continues after dissolution only for the purpose of winding up its business. The partnership is terminated when the winding up of its business is completed." *Id*. § 9A-802(a). "After dissolution, a partner who has not wrongfully dissociated may participate in winding up the partnership's business, but on application of any partner," a court "for good cause shown, may order judicial supervision of the winding up." *Id*. § 9A-803(a).

In certain circumstances, a court may order judicial dissolution of a partnership, upon application of a partner. *Id*. § 9A-801(5). Plaintiff invokes two such circumstances to dissolve the Partnerships: when "[a]nother partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner," *id*. § 9A-801(5)(ii), and when "[i]t is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement." *Id*. § 9A-801(5)(iii).

The unopposed facts in the Motion reflect that, as to the Patterson Partnership, Mr. Xu failed to pay profits due to plaintiff or his father, and failed to make other payments due and owing, despite the Patterson Partnership having earned profits since 2017.  ECF 21-2, ¶ 10.  Instead, Mr. and Ms. Xu diverted this money to themselves.  *Id*. ¶ 11.  This constituted a breach of Mr. Xu's obligations under the Patterson Agreement.  *Id*. ¶ 10; *see* ECF 21-4 (governing dispersal of income from the Patterson Property).  Furthermore, despite repeated demands, Mr. Xu failed to make "even simple efforts" to repair the Patterson Property or find paying tenants, leaving it vacant and non-productive since July 2019.  *Id*. ¶ 12.

Similarly, as to the Statesboro Partnership, Ms. Xu failed to pay profits due to plaintiff or his father, and failed to make other payments that were due, despite the Statesboro Partnership having earned profits.  *Id*. ¶ 33; *see* ECF 21-7 at 4 (governing dispersal of income from the Statesboro Property).  Instead, Mr. and Ms. Xu diverted this money to themselves.  ECF 21-2, ¶ 34.

Under the circumstances, and in the absence of any challenge to the facts asserted in the Motion, I conclude that, at the very least, Mr. Xu (as to the Patterson Partnership) and Ms. Xu (as to the Statesboro Partnership) engaged in conduct related to each partnership that makes it not reasonably practicable for plaintiff to carry on the businesses in partnership with them.  Therefore, judicial dissolution of the Partnerships is appropriate, pursuant to C.A. § 9A-801(5)(ii).

As to winding up, RUPA, C.A. § 9A-807 provides, in relevant part (boldface in original):

**Application of assets**

(a) In winding up a partnership's business, the assets of the partnership, including the contributions of the partners required by this section, must be applied to discharge its obligations to creditors, including, to the extent permitted by law, partners who are creditors. Any surplus must be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions under subsection (b) of this section.

18

**Settlements**

> (b) Each partner is entitled to a settlement of all partnership accounts upon winding up the partnership business. In settling accounts among the partners, the profits and losses that result from the liquidation of the partnership assets must be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account. . . .

In short, "[w]hen a partnership is liquidated, or 'wound up,' its assets are sold, its debts are paid, and any surplus is distributed to the partners in proportion to their partnership interests." *East Park Ltd. P'Ship v. Larkin*, 167 Md. App. 599, 617-18, 893 A.2d 1219, 1230 (2006) (citing C.A. § 9A-807). Furthermore, as noted, "relations among the partners and between the partners and the partnership are governed by the partnership agreement." C.A. § 9A-103(a).

The judgment requested by plaintiff as to the winding up of the Partnerships complies with these legal principles and the provisions of each partnership agreement. For the Patterson Partnership, this is straightforward. Under plaintiff's requested relief, the funds currently in the Court's registry would first be used to repay plaintiff's loan, plus applicable interest, as required by C.A. § 9A-807(a) and the Patterson Agreement. *See* ECF 21-4. The remainder would then be divided evenly between plaintiff and Mr. Xu, consistent with the Patterson Agreement and their equal initial contributions of $10,000. *See id*. Prior to an award of attorney's fees, which are discussed below, this results in payment of $130,283.32 to plaintiff, and $61,981.57 to Mr. Xu. *See* ECF 21-5. As mentioned, the larger amount for plaintiff reflects plaintiff's entitlement to repayment of the loan originally made by Zhong Jun Wei, with interest.

As noted, for the Statesboro Partnership, plaintiff asks the Court to declare that the partnership's sole asset, the Statesboro Property, is partnership property, so that it may be sold and its proceeds distributed according to the Statesboro Agreement. *See* ECF 21-1 at 10-13. When property recorded in the name of an individual partner is, in fact, partnership property, the

individual holds the property in a resulting trust for the benefit of the partnership.  *See Matter of Urban Dev. Co. and Associates*, 452 F. Supp. 902, 905 (D. Md. 1978).

"Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership."  C.A. § 9A-204(c).  But, "[p]roperty acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes."  *Id*. § 9A-204(d).

Ultimately, "'[t]he criterion of whether property not held in the partnership name is partnership property is the intention of the parties to devote it to partnership purposes, to be found from the facts and circumstances surrounding the transaction considered in connection with the conduct of the parties in relation to the property.'"  *Kay v. Gitomer*, 253 Md. 32, 35-36, 251 A.2d 853, 855 (1969) (quoting *Vlamis v. De Weese*, 216 Md. 384, 390-91, 140 A.2d 665, 669 (1958)); *see also United States v. Chapel Chase Joint Venture Inc.*, 753 F. Supp. 179, 182 (D. Md. 1990) ("Whether or not a particular property constitutes a partnership asset depends upon the intention of the parties, and this intention can be determined only by weighing all of the pertinent facts and circumstances.") (internal citations omitted); *Madison Nat. Bank v. Newrath*, 261 Md. 321, 329-32, 275 A.2d 495, 499-501 (1971) (where land was leased on a long-term basis to three persons, who agreed to contribute as their shares of capital all title to the leasehold interest, and then agreed to manage and operate the shopping center on land for 25 years and share profits and losses equally, the organization was a partnership, and the property belonged to the partnership).

To be sure, the Statesboro Property was originally purchased by Ms. Xu in her name, and not with Statesboro Partnership assets, several years prior to the execution of the Statesboro Agreement. *See* ECF 21-2, ¶ 24; ECF 21-6. But, the relevant circumstances changed dramatically after the execution of that agreement. Plaintiff and his father contributed a substantial "initial investment" to the Statesboro Partnership—the purpose of which was to manage the Statesboro Property—in exchange for Zhong Jun Wei receiving a 50% interest in the Statesboro Property. ECF 21-2, ¶ 26; ECF 21-7 at 1, 4. Plaintiff avers, without opposition, that "it was the intention of Guanhua Xu and Plaintiff's predecessor in interest to have the Statesboro Property deemed as partnership property." ECF 21-2, ¶ 29. Indeed, the Statesboro Agreement asserts that Zhong Jun Wei and Ms. Xu "jointly acquired the fee title" to the Statesboro Property, with profits and losses from the operation of the property to be divided among them. ECF 21-7 at 1-2, 4.

In sum, the facts and circumstances, as presented in the uncontroverted Motion, reflect an intention to devote the Statesboro Property exclusively to the purposes of the Statesboro Partnership, backed by significant financial investment from Zhong Jun Wei and plaintiff, and with the resulting profits and losses divided up among the partners. Therefore, I conclude that the Statesboro Property is property of the Statesboro Partnership.

I will grant the judgment and relief requested in the Summary Judgment Motion, as to both the Patterson Partnership and the Statesboro Partnership. This relief, which is summarized above, is spelled out in detail in the accompanying Order, which is based on the proposed order submitted by plaintiff. *See* ECF 21-9.

The proposed order submitted by plaintiff (*id.*) envisions the Court removing this matter from its "active trial docket" to permit the sale of the Statesboro Property and subsequent proceedings, followed by a "review" in no earlier than six months, to determine whether any action

is necessary from the Court, or whether dismissal of the case is appropriate. *Id*. at 7-8. To be consistent with the Court's practices, I shall modify this request so as to stay this matter upon the issuance of this Memorandum Opinion and accompanying Order. And, I shall shorten the reporting deadline from six months to four.

Therefore, four months after the issuance of this Memorandum Opinion and the corresponding Order, plaintiff shall submit a status report to the Court as to the case, including as to whether it may be dismissed (unless, by then, it has already been dismissed).

### III.     Attorneys' Fees

### A.  Legal Standard

As noted, plaintiff has also filed two petitions for attorneys' fees and costs, one for work by counsel on behalf of the Patterson Partnership (ECF 22), and one for work by counsel on behalf of the Statesboro Partnership. ECF 23. The asserted basis for the award of attorneys' fees is the provision in each partnership agreement providing for the award of reasonable attorneys' fees to the prevailing party in litigation enforcing or interpreting the agreement. *See* ECF 21-3 at 3; ECF 21-7 at 3.

In a diversity action such as this, *see* 28 U.S.C. § 1332, a party's right to recover attorneys' fees is ordinarily governed by state law. *See Rishell v. Computer Sciences Corp.*, 702 Fed. App'x 103, 103 n.* (4th Cir. 2017); *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010); *McCollum v. State Farm Ins. Co.*, 376 Fed. App'x 217, 220 (3d Cir. 2010); *Ranger Const. Co. v. Prince William County Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979). As discussed, Maryland law applies here.

In general, Maryland follows the "American Rule," under which "a prevailing party is not awarded attorneys' fees 'unless (1) the parties to a contract have an agreement to that effect, (2)

there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.'" *Nova Research, Inc. v. Penske Truck Leasing Co*., 405 Md. 435, 445, 952 A.2d 275, 281 (2008) (quoting *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434, 437 (2005)). "Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006); *see Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 313 (4th Cir. 2020) (same).

However, "Maryland law limits the amount of contractual attorneys [sic] fees to actual fees incurred, regardless of whether the contract provides for a greater amount." *SunTrust Bank v. Goldman*, 201 Md. App. 390, 398, 29 A.3d 724, 728 (2011). Moreover, "[e]ven in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Myers*, 391 Md. at 207, 892 A.2d at 532; *see also Atl. Contracting & Material Co. v. Ulico Cas. Co*., 380 Md. 285, 316, 844 A.2d 460, 478 (2004); *SunTrust*, 201 Md. App. at 401, 29 A.3d at 730 ("Current law allows a court to grant only those attorney's fees it finds reasonable."). Thus, "courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award." *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 333, 7 A.3d 1, 5 (2010). The "reasonableness of attorney's fees is a factual determination within the sound discretion of the court." *Myers*, 391 Md. at 207, 892 A.2d at 532.

"'The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" Ulico, 380 Md. at 316, 844 A.2d at 478 (citation omitted). Therefore, the party seeking a fee award must provide "'detailed records'" that

specify "'the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged.'" *Rauch v. McCall*, 134 Md. App. 624, 639, 761 A.2d 76, 84 (2000) (citation omitted), *cert. denied*, 362 Md. 625, 766 A.2d 148 (2001). "'[W]ithout such records, the reasonableness, *vel non*, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.'" *Id.* at 639, 761 A.2d at 85 (citation omitted).

Maryland courts ordinarily utilize the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *Friolo v. Frankel*, 373 Md. 501, 504-05, 819 A.2d 354, 356 (2003). However, the Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows*, 416 Md. at 336, 7 A.3d at 7; *see also E. Shore Title Co. v. Ochse*, 453 Md. 303, 337, 160 A.3d 1238, 1258 (2017) (stating that the "litigation did not involve a fee-shifting statute, and therefore the lodestar method of calculation would not be appropriate"). This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature . . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505, 28 A.3d 75, 84 (2011).

In Maryland, in regard to an award based on a contract, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows*, 416 Md. at 336-37, 7 A.3d at 8. MRPC 1.5(a) enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee":

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

A list of factors similar to those in MRPC 1.5 was enunciated for use in a lodestar analysis in the seminal case of *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974). The so-called "*Johnson* factors" have been adopted for use in lodestar cases by the Fourth Circuit, see *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 n. 28 (4th Cir. 1978), and in Maryland. *See Friolo*, 373 Md. at 522 n. 2, 819 A. 2d at 366 n. 2.

Cases decided under the lodestar approach can "provide helpful guidance" in contractual fee-shifting cases. *Congressional Hotel*, 200 Md. App. at 505, 28 A.3d at 85. This is because "there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis." *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8.

"In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately." *SunTrust*, 201 Md. App. at 401, 29 A.3d at 730; *see Monmouth Meadows*, 416 Md. at 337 n.11, 7 A.3d at 8 n.11. Indeed, a court need not "make explicit findings with respect to Rule 1.5" at all, or even "mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness." *Monmouth Meadows*, 416 Md. at 340 n. 13, 7 A.3d at 10 n.13.

Moreover, when conducting an MRPC 1.5 analysis, a court "should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment.  Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated."  *Id*. at 337, 7 A.3d at 8.  And, a "trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees."  *Id*. at 337-38, 7 A.3d at 8.

This Court's Local Rules are also relevant.  Local Rule 109.2(b) requires an attorneys' fees motion to be properly supported and prepared in accordance with the Court's "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases," if they are applicable.  *See* Local Rules app. B (the "Guidelines").  The Guidelines are applicable here, as they "apply to cases in which a prevailing party would be entitled, by applicable law or contract, to reasonable attorneys' fees . . . ."  *Id*. at 1 n.*.  Among other things, the Guidelines set out mandatory rules regarding billing format and time recordation, organized by litigation phase, and require submission of quarterly statements to opposing counsel.  *Id*. § 1.[10]  It also outlines non-compensable time and reimbursable expenses and sets guidelines for hourly rates for attorneys.  *Id*. §§ 2-4.

Under MRPC 1.5(a)(3), a court reviewing an attorneys' fee request must consider "the fee customarily charged in the locality for similar legal services."  In this inquiry, the Fourth Circuit follows the "locality rule," whereby "'[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'"  *Montcalm Pub. Corp. v. Commonwealth of Va*., 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted).  "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing

---

[10] The Guidelines do not clarify whether this quarterly submission obligation applies when the opposing party is self-represented.

market rate.  However, in the absence of sufficient documentation, the court may rely on its own knowledge of the market."  *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).

"In the District of Maryland, this market knowledge is embedded in the Guidelines." *Gonzales v. Caron*, CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).  The Guidelines set forth advisory fee ranges for attorneys based on years in practice.  The rates "are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," and "may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases."  Guidelines § 3 n.*.  Although "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzales*, 2011 WL 3886979, at *2.

The hourly rates in the Guidelines are as follows, Guidelines § 3:

a. Lawyers admitted to the bar for less than five (5) years: $ 150-225.

b. Lawyers admitted to the bar for five (5) to eight (8) years: $ 165-300.

c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $ 225-350.

d. Lawyers admitted to the bar for fifteen (15) years or more: $ 300-475.

e. Paralegals and law clerks: $ 95-150.

## B.  Discussion

As noted, both the Patterson Agreement and the Statesboro Agreement contain fee-shifting provisions entitling the "prevailing party . . . to reasonable attorney's fees" in "any action at law or in equity brought to enforce or interpret the provisions" of the agreements.  ECF 21-3 at 3; ECF 21-7 at 3.  Under Maryland law, these provisions are valid and enforceable. *See Myers*, 391 Md. at 207, 892 A.2d at 532.  This litigation clearly has been brought to enforce and interpret the

provisions of the Patterson Agreement and the Statesboro Agreement.  And, it is equally clear that plaintiff is the "prevailing party," having obtained an entry of default against all defendants, a default judgment against CELLC, and summary judgment against Mr. and Ms. Xu, dissolving the Partnerships on his requested terms.  *See Grabgrczyk v. Stein*, ___ F.4th ___, 2022 WL 1216399, at *3-6 (4th Cir. Apr. 26, 2022) (discussing the concept of a prevailing party in a § 1983 case).

Therefore, I turn to the reasonableness of the requested attorneys' fees.  *See Monmouth Meadows*, 416 Md. at 333, 7 A.3d at 5.  In the Patterson Attorneys' Fees Petition, plaintiff seeks an award of $18,520 in fees for 72 hours of attorney and paralegal work.  ECF 22 at 3.  And, in the Statesboro Attorneys' Fees Petition, plaintiff seeks an award of $12,527.50 in fees for 50.5 hours of attorney and paralegal work.  ECF 23 at 3.  In both cases, work was primarily performed by attorney Ryan Z. Ullman, Esq., with additional work by attorney Adam M. Spence, Esq., and paralegals Cameron E. Howard and Rebecca J. Dennett.  The rate charged was $350 per hour for Spence; $225 per hour for Ullman; and $150 per hour for Howard and Dennett.  ECF 22 at 11; ECF 23 at 11.

As explained in the Patterson Attorneys' Fee Petition, the figure of $18,520 is less than 24% of the approximately $75,000 counsel has already obtained for plaintiff from defendants as to the Patterson Partnership through informal negotiations during this litigation, and that amount is expected to nearly triple upon the distribution of the Patterson Sale Proceeds.  ECF 22 at 14. And, as for the Statesboro Attorneys' Fee Petition, the figure of $12,527.50 is about 17% of the approximately $75,000 counsel has similarly obtained as to the Statesboro Partnership.  ECF 23 at 14-15.  The ultimate proportion as to the Statesboro Partnership will depend upon the sale price of the Statesboro Property.

As can be imagined, much of counsel's work benefited both the Patterson Partnership and the Statesboro Partnership.  When this was the case, charges were divided between the Partnerships.  ECF 22 at 3; ECF 23 at 3.  In other words, there is no double-counting of work across the Attorneys' Fees Petitions.

The Attorneys' Fees Petitions include comprehensive information supporting the requested awards.  This includes a detailed description of the work performed by the lawyers at each stage of the litigation, together with a fee amount for each stage, as contemplated by the Guidelines, § 1(b) (ECF 22 at 6-10; ECF 23 at 6-10); biographies of Ullman and Spence (ECF 22 at 10-11; ECF 23 at 10-11); billing records itemized by date, service rendered, individual, time, rate, and charge, and coded to each partnership (ECF 22-1; ECF 23-1); spreadsheets summarizing fees (ECF 22-3; ECF 23-3); and the engagement letter between counsel and plaintiff (ECF 22-5; ECF 23-5).  In addition, each motion includes an Affidavit by Spence averring that, based on his legal experience and that of the firm, the amount incurred in legal fees is "fair and reasonable."  ECF 22-2; ECF 23-2.

The hourly rates charged by Spence, Ullman, Howard, and Dennett fall within those contemplated in the Guidelines.  *See Gonzales*, 2011 WL 3886979, at *2 (noting that "generally this Court presumes that a rate is reasonable if it falls within these ranges").  Specifically, Spence graduated from law school in 1995, more than twenty years ago.  ECF 22 at 10.  He charged $350 per hour, and the Guidelines range for lawyers admitted to the bar for twenty years or more is between $300 and $475.[11]  Ullman graduated from law school in 2019.  ECF 22 at 11.  He charged $225 per hour, and the Guidelines range for lawyers admitted to the bar for less than five years is

---

[11] The materials do not specifically indicate when each attorney joined the bar, but it can be assumed to be around when they graduated from law school.

between $150 and $225.  Finally, each paralegal charged $150 per hour, and the Guidelines range for paralegals is between $95 and $150.

The Attorneys' Fees Petitions also include a detailed discussion of the *Johnson* factors. ECF 22 at 5-15; EC 23 at 5-16.  As discussed, the *Johnson* factors are similar to those considered under MRPC 1.5 for contractual fee-shifting cases.  *See Monmouth Meadows*, 416 Md. at 336-37, 7 A.3d at 8; *Congressional Hotel*, 200 Md. App. at 505, 28 A.3d at 85.

Reviewing the Rule 1.5 factors and the discussion in the Attorneys' Fees Petitions, I agree that the requested attorneys' fees are reasonable and appropriate.  Plaintiff has supported these motions with considerable information and documentation, as contemplated by the Guidelines.[12] The hourly rate is within the applicable Guidelines range.  Successfully pursuing this case required meaningful work from counsel at multiple stages of litigation, involving complicated facts and nonresponsive defendants.  Furthermore, this proposed fees are not disproportionate to the overall size of the judgment, when taking into account the forthcoming distribution of the Patterson Sale Proceeds and the sale of the Statesboro Property.  And, no party has objected to the proposed attorneys' fees, or challenged them in any way.  Accordingly, I will grant the Attorneys' Fees Petitions as to attorneys' fees, as requested.

The Attorneys' Fees Petitions also request an award of $83.21 in costs as to each fee petition for prosecuting the litigation.  ECF 22 at 4, 15; ECF 23 at 4, 16.  The motions also refer to these costs as "reasonable expenses."  ECF 22 at 15; ECF 23 at 16.  For these costs, the motions refer generally to the billing records (ECF 22-1; ECF 23-1), without indicating specific items.

---

[12] I note that the Guidelines envision the quarterly submission to opposing counsel of "statements showing the amount of time spent on the case and the total value of that time." Guidelines, § 1(c). The Attorneys' Fees Petitions do not reference any such submission by plaintiff's counsel to defendants. However, it is also the case that defendants were largely nonresponsive, and not represented by counsel. Furthermore, no party has raised this as an issue.

Expenses indicated on the billing records include postage; courier and FedEx charges; "Advanced Person Searches" for Mr. and Ms. Xu; and a "Records Request Fee from Sprint Process LLC." *See* ECF 22-1 at 9, 24.  The motions also refer generically to "service of process charges" (ECF 22 at 15; ECF 23 at 16) and "copying fees" (ECF 23 at 16), but no such costs clearly appear in the billing records.

The Attorneys' Fees Petitions distinguish attorneys' fees from these costs or expenses. Although fee-shifting provisions often allow for the award of expenses in addition to fees, the scope of contractual fee-shifting must be determined by the contract.  *See Calomiris v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1999) ("It is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'") (internal citation omitted).  Here, the fee-shifting provision in each partnership agreement specifically envisions the award of "attorney's fees," but does not mention costs.  *See* ECF 21-3 at 3; ECF 21-7 at 3.

Thus, any award of costs or expenses must be premised on authority apart from the agreements.  As a general matter, Fed. R. Civ. P. 54(d)(1) authorizes the award of costs to the prevailing party.[13]  But, these taxable costs are narrowly defined as those expenses enumerated in 28 U.S.C. § 1920.  *See Taniguchi v. Kan Pacific Saipan Ltd.*, 566 U.S. 560, 572-73 (2012); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).  The Court has also published "Guidelines for Bills of Costs" (the "Costs Guidelines") explicating this issue.  *See* https://www.mdd.uscourts.gov/sites/mdd/files/BillofCostsGuidelines.pdf.

---

[13] Federal law governs costs under this provision, even in diversity actions. *See, e.g.*, *Dunne v. Resource Converting, LLC*, 991 F.3d 931, 941 (8th Cir. 2021); *Stender v. Archstone-Smith Operating Trust*, 958 F.3d 938, 943-45 (10th Cir. 2020); *Glassman Const. Co., Inc. v. Md. City Plaza, Inc.*, 371 F. Supp. 1174, 1162 (D. Md. 1974).

Section 1920 does not clearly include any of the items plaintiff indicated as expenses in the billing records.  As to postage and mailing expenses, "courts have generally not allowed the inclusion of mailing expenses as a taxable cost, absent special circumstances." *AM Properties v. Town of Chapel Hill*, 202 F. Supp. 2d 451, 456 (M.D.N.C. 2002) (collecting cases).  And, the Costs Guidelines provide that fees for postage and delivery are generally not taxable. *See* Costs Guidelines at 18.  Nor is the Court aware of any authority supporting the proposition that research or investigatory expenses relating to opposing parties are taxable costs.  Indeed, the Costs Guidelines provide that "computerized legal research" and "investigative services" are not taxable costs. *Id*. at 17.  Section 1920(4) does refer to "the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  And, reasonable costs paid to private process servers may be taxed. *See* Costs Guidelines at 6.  But, as noted, the billing records do not clearly include any such expenses.

Plaintiff has not offered any special circumstances, nor mounted more than a cursory argument, for the award of such costs.  This is in spite of the fact that Local Rule 109.1(b) requires a bill of costs, other than for filing fees, to be supported by affidavit and memorandum.  Given the lack of detail or justification, I shall not award the requested costs.  This does not preclude plaintiff from filing a bill of costs with the Clerk of Court after the entry of judgment, however. *See* Local Rule 109.1.

### IV.    Conclusion

For the reasons stated above, I shall grant the Summary Judgment Motion.  And, I shall grant the Attorney Fees Petitions, except as to costs.

An Order follows, consistent with this Memorandum Opinion.

Date: May 4, 2022                              _____/s/_____

                                               Ellen L.  Hollander
                                               United States District Judge